UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN J KORESKO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TURHAN COOK, an individual, et al.,<br><br>　　　　Defendants. | Case No.: 1:21-cv-01432-DAD-JLT<br><br>ORDER DISMISSING THE COMPLAINT WITH LEAVE TO AMEND<br><br>[THIRTY-DAY DEADLINE] |

　　　　John Koresko seeks to proceed *pro se* and *in forma pauperis*[1] in this action against Turhan Cook and the Kern County Sheriff's Department. (See Docs. 1, 3, 4.) Because Plaintiff fails to allege facts sufficient to support the claims, the complaint is **DISMISSED** with leave to amend.

**I.　　Screening Requirement**

　　　　When an individual seeks to proceed *in forma pauperis*, the Court is required to review the complaint and shall dismiss a complaint, or portion of the complaint, if it is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2).

　　　　A plaintiff's claim is frivolous "when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."

---

[1] The Court is deferring ruling on Plaintiff's request to proceed *in forma pauperis* until Plaintiff provides sufficient facts to determine whether the case is frivolous.

1

Denton v. Hernandez, 504 U.S. 25, 32-33 (1992). In other words, a complaint is frivolous where the litigant sets "not only the inarguable legal conclusion, but also the fanciful factual allegation." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

## II.     Pleading Standards

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A pleading must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing that the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a).

A complaint must give fair notice and state the elements of the plaintiff's claim in a plain and succinct manner. Jones v. Cmty. Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984). The purpose of the complaint is to inform the defendant of the grounds upon which the complaint stands. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Supreme Court noted,

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (internal quotation marks and citations omitted). Vague and conclusory allegations do not support a cause of action. Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). The Court clarified further,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Citation]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Citation]. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. [Citation]. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

Iqbal, 556 U.S. at 679 (citations omitted). When factual allegations are well-pled, a court should assume their truth and determine whether the facts would make the plaintiff entitled to relief; legal conclusions are not entitled to the same assumption of truth. Id. The Court may grant leave to amend a complaint to the extent deficiencies of the complaint can be cured by an amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

### III. Section 1983 Claims

An individual may bring an action for the deprivation of civil rights pursuant to 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a cognizable claim under Section 1983, a plaintiff must allege facts from which it may be inferred (1) he was deprived of a federal right, and (2) a person or entity who committed the alleged violation acted under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976).

### IV. Factual Allegations

Plaintiff alleges that he has been subject to "domestic terrorism" by defendant Turhan Cook since February 2014. (Doc. 1 at 2.) Plaintiff describes his first interaction with Cook when Cook moved to Mountain Valley Association located in Sand Canyon and alleges that this began seven years of "harassment, pain, degradation, fear and several attempts at physical harm to Plaintiff by Cook." (Id.) Plaintiff also alleges that Cook is a snitch for law enforcement, specifically the Kern County Sheriff's Department. (Id.)

According to Plaintiff, for several years, Cook would commit juvenile pranks on Plaintiff, such as nightly taps on the windows and house siding. (Doc. 1 at 2.) Plaintiff also alleges that on one evening at about 11:00 p.m., there were three loud, long air horn blasts at Plaintiff's rear window where he sat watching television, and Plaintiff was in his mid-eighties at that time. (Id. at 2-3.)

Plaintiff reports that he lives in a mobile home with a rear door that is accessed by wooden steps, which were at least twenty years old and built by Plaintiff. (Doc. 1 at 3.) According to the Plaintiff, on the evening of December 2, 2020, he stepped out the rear door with his left leg while carrying a plastic container with a gallon of water for various animals. (Id.) Plaintiff reports that when he looked down, he saw that the left side of the steps had the frame pulled away from the steps exposing the nails, but Plaintiff was in full motion and unable to stop his forward momentum. (Id.) Plaintiff alleges that he then fell forward "on his left side onto the sabotaged steps that collapsed under

his weight," hitting the ground with his left shoulder and head. (Id.) Plaintiff alleges that he was passed out for some time after hitting his head. (Id. at 4.) Plaintiff alleges that he is now a "cripple," is in constant pain and must sleep on his right side on his sofa. (Id.) According to Plaintiff, in the latter part of 2020, Cook and his companion, Smith, sold their property. (Id.)

According to Plaintiff, "Cook makes daily and nightly forays onto Plaintiff's property." (Doc. 1 at 5.) Plaintiff reports that some of the destruction over the years included, smashing out the rear window of a 1964 Cadillac Fleetwood shell that Plaintiff purchased and cracking the windshield of Plaintiff's other 1964 Cadillac. (Id.) Plaintiff also alleges that Cook broke up portions of Plaintiff's concrete driveway. (Id.)

Plaintiff also reports that he had a seventh army cloth patch taped to the driver side rear windshield of both of his Cadillacs, and one morning Plaintiff found one patch was missing. (Doc. 1 at 5.) Plaintiff reports that he called the sheriff's office in Tehachapi to make a complaint about the missing patch, and the deputy who took the call asked the value of the patch and indicated that he could not address the incident as he was on duty and could not leave his station. (Id.) According to Plaintiff, the following morning, Plaintiff noticed that the patch was back in the rear window in his Cadillac, but not taped as it was before its removal. (Id.)

Plaintiff claims that in 2021, "[s]omething had changed the atmosphere," and he noticed articles in his home had been moved, including a clock on a stand in the same position for years had been moved and was placed differently, a water glass that was always kept in a cupboard was on the kitchen island, the channel on the television was not on the station it was on when he turned it off the night before, and papers he knew were in a folder were on the folder instead. (Doc. 1 at 6.) Plaintiff alleges that Cook is responsible for this as he "plays games by moving objects like a child." (Id.) Plaintiff alleges that he dismissed these, but later he realized that his house and garage keys and other items had been taken while he was in the hospital after surgery for a fractured pelvis, and he alleges that the keys were duplicated by someone. (Id. at 7.)

Additionally, Plaintiff alleges that the Kern County Sheriff's Department has engaged in gross discrimination against Plaintiff and that it failed to protect Plaintiff from Cook's continuous harassment and physical and mental harm allegedly inflicted on him. (Doc. 1 at 8-9.) Plaintiff asserts that "the Kern

County Sheriff's Department has exhibited gross neglect of their duty to protect every citizen who calls it with a legitimate grievance," such as his own, and to act to eliminate any activity that is detrimental or damaging to the citizen. (Id. at 8.) Plaintiff alleges that the Kern County Sheriff's Department is as culpable for Plaintiff's injuries as Cook is because they have refused to protect Plaintiff from Cook who escalated harassment to physical injury, which resulted in a lifetime injury. (Id. at 9.)

Plaintiff claims damages against the Kern County Sheriff's Department in the sum of $5,000 for its failure and refusal to protect or aid Plaintiff in his requests for help from Cook. (Doc. 1 at 10.) Plaintiff also seeks an award of the same amount from "Cook for his unjustified and ongoing persecution." (Id.) Plaintiff also seeks an order to permanently enjoin Cook from entering Plaintiff's property and from associating with any person for the purpose of harassing or attempting to harass Plaintiff. (Id. at 7, 10.)

## V.     Discussion and Analysis

### A.     Claims against the Kern County Sheriff's Department

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Monell v. New York City Dep't. of Soc. Services, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Id., 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. Id. at 694; Gibson v. Cty. of Washoe, 290 F.3d 1175, 1185 (9th Cir. 2002).

To establish municipal liability, plaintiff must allege (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." See Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)); see also Monell, 436 U.S. at 690-92. A policy or custom of a government may be established when:

(1) A longstanding practice or custom . . . constitutes the standard operating procedure

>of the local government entity;
>
>(2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or
>
>(3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

Pellum v. Fresno Police Dep't, 2011 U.S. Dist. LEXIS 10698, 2011 WL 350155 at *3 (E.D. Cal. Feb. 2, 2011) (quoting Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. Menotti, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." Mortimer v. Baca, 594 F.3d 714, 722 (9th Cir. 2010) (quotation omitted, citing Oviatt, 954 F.2d at 1477-78; accord. Canton, 489 U.S. at 390). To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." Gibson, 290 F.3d at 1186 (citing Farmer v. Brennan, 511 U.S. 825, 841 (1994)). Plaintiff has not identified any custom or policy of the Kern County Sheriff's Department or alleged the municipality had notice of any potential harm caused by its policies.

For municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused the plaintiff harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

The plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. See City of St.

Louis, 485 U.S. at 123 ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Plaintiff has made no allegations supporting a conclusion that the Kern County Sheriff's Department had a custom of violating civil rights. Instead, Plaintiff alleges that it failed and refused to protect him individually from defendant Cook. (See Doc. 1 at 8.) Moreover, Plaintiff has not plead sufficient allegations supporting a conclusion that he suffered a violation of his constitutional rights. Thus, a Section 1983 claim against the Kern County Sheriff's Department is not cognizable and the Court dismisses such claims. If Plaintiff desires to proceed with this action, to the extent that he wishes to allege a claim pursuant to Monell against the Kern County Sheriff's Department named in the complaint, Plaintiff should set forth a short and plain statement of each such purported claim.

### B. Civil Rights Claims

To the extent that Plaintiff is purporting to allege any federal civil rights claims against any defendant, Plaintiff's complaint does not appear to set forth any violations of any constitutional right. In fact, many of Plaintiff's factual allegations appear to pertain to a private citizen or individual (Turhan Cook). However, to state a federal civil rights claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him of a right guaranteed under the United States Constitution or a federal statute. See West v. Atkins, 487 U.S. 42, 48 (1988); Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis in original)). Accordingly, if Plaintiff wishes to pursue this action, Plaintiff should set forth a short and plain statement showing that the named defendant was acting under color of state law and that such defendant took an affirmative act, participated in another's affirmative act, or omitted to perform an act that caused the constitutional deprivation of which he complains.

///

### C. Statute of Limitations

Federal civil rights claims are subject to the forum state's statute of limitations applicable to personal injury claims. Wallace v. Kato, 549 U.S. 384, 387 (2007); Owens v. Okure, 488 U.S. 235, 249-50 (1989). Effective January 1, 2003, California enacted a two-year statute of limitations for personal injury claims. See Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007) (citing Cal. Civ. Proc. Code § 335.1).

Federal law, however, determines when a claim accrues and when the applicable limitations period begins to run. Wallace, 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" (emphasis in original)). A cause of action accrues under federal law as soon as a potential claimant either is aware or should have been aware of the existence and source of his or her injury. See Lee v. United States, 809 F.2d 1406, 1409-10 (9th Cir. 1987); see also Wallace, 549 U.S. at 388 ("the statute of limitations would normally commence to run" on the date on which a plaintiff could have filed suit). In addition, federal courts must give effect to a state's tolling provisions. See Hardin v. Straub, 490 U.S. 536, 543-44 (1989); TwoRivers v. Lewis, 174 F.3d 987, 992 (9th Cir. 1999) ("where the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules").

Some of Plaintiff's factual allegations appear to pertain to events that happened beginning in 2014. (See Doc. 1.) If Plaintiff desires to pursue this action, he is advised that, because he filed his complaint on September 27, 2021, any cause of action that arises from any events that Plaintiff was aware of prior to September 27, 2019, would be barred by the statute of limitations in the absence of any grounds for tolling.

### D. State Law Claims

Plaintiff attempts to raise a claim pursuant to Cal. Code Civ. Proc. § 335.1 (Doc. 1 at 3-7), which provides the time of commencing actions: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

controversy under Article III," except as provided in subsections (b) and (c). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. In the absence of any cognizable federal claims, the Court declines to address any purported state law claims.

## VI.     Conclusion and Order

As currently drafted, the Plaintiff's filing does not contain sufficient factual details to permit the Court to draw the reasonable inference that any defendants are liable for the misconduct alleged.[2] See Iqbal, 556 U.S. at 678. Plaintiff's complaint does not comply with the requirements of Rule 8(a). However, the Court will provide Plaintiff with **one** opportunity to file an amended complaint that sets forth facts sufficient to support his claims. See Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987); see also Lopez, 203 F.3d at 1128 (dismissal of a *pro se* complaint without leave to amend for failure to state a claim is proper only where it is obvious that an opportunity to amend would be futile). The amended complaint must reference the docket number assigned to this case and must be labeled "First Amended Complaint."

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). In addition, the amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Once Plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Finally, Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1986) (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)). Based upon the foregoing, the Court **ORDERS**:

    1.     Plaintiff's Complaint is **DISMISSED** with leave to amend; and

---

[2] For example, it appears that the plaintiff has concluded that defendant Cook has taken the action described, but the complaint fails to explain how the plaintiff knows this. If the plaintiff chooses to amend the complaint, he must set forth the facts upon which his conclusions are based.

9

2. Within thirty days from the date of service of this order, Plaintiff **SHALL** file a First Amended Complaint or a notice of voluntary dismissal of the action. **If Plaintiff fails to comply with this order to file a First Amended Complaint, the action may be dismissed for failure to prosecute and failure to obey the Court's order**.

IT IS SO ORDERED.

Dated:   **October 21, 2021**        _ **/s/ Jennifer L. Thurston**
                                           CHIEF UNITED STATES MAGISTRATE JUDGE