UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN J KORESKO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TURHAN COOK, et al.,<br><br>　　　　　Defendants. | Case No. 1:21-cv-01432-DAD-BAK (EPG)<br><br>FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S COMPLAINT BE DISMISSED FOR FAILURE TO STATE A CLAIM<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

　　　　Plaintiff John Koresko ("Plaintiff") is a seeking to proceed *pro se* and *in forma pauperis* in this action against Turhan Cook and the Kern County Sheriff's Department. (ECF Nos. 1, 3, 4.) Plaintiff filed the complaint commencing this action on September 27, 2021. (ECF No. 1).

　　　　On October 21, 2021, the Court screened the complaint and found that it failed to state any cognizable claims. (ECF No. 5.) The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state any cognizable claims and facts sufficient to support the claims, and gave Plaintiff leave to file a First Amended Complaint. (*Id.*) Plaintiff failed to comply, and the Court issued an order to show cause why the action should not be dismissed for failure to comply with the Court's orders. (ECF No. 8.) Plaintiff responded to the order to show cause, insisting that his allegations in the initial complaint are true. (ECF No. 9.) The Court construes Plaintiff's response as a notice that he intends to stand on his complaint and not file an amended complaint.

For the reasons set forth below, the Court recommends that this action be dismissed for failure to state a claim.

I. **FAILURE TO STATE A CLAIM**

A. **Screening Requirement**

As Plaintiff is proceeding *in forma pauperis*, the Court screens this complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

B. **Summary of Plaintiff's Complaint**

Plaintiff alleges that he has been subject to "domestic terrorism" by defendant Turhan Cook since February 2014. (ECF No. 1 at 2.) Plaintiff describes his first interaction with Cook when Cook moved to Mountain Valley Association located in Sand Canyon and alleges that this began seven years of "harassment, pain, degradation, fear and several attempts at physical harm to Plaintiff by Cook." (*Id.*) Plaintiff also alleges that Cook is a snitch for law

enforcement, specifically the Kern County Sheriff's Department. (*Id*.)

According to Plaintiff, for several years, Cook would commit juvenile pranks on Plaintiff, such as nightly taps on the windows and house siding. (*Id*. at 2.) Plaintiff also alleges that on one evening at about 11:00 p.m., there were three loud, long air horn blasts at Plaintiff's rear window where he sat watching television, and Plaintiff was in his mid-eighties at that time. (*Id*. at 2-3.)

Plaintiff reports that he lives in a mobile home with a rear door that is accessed by wooden steps, which were at least twenty years old and built by Plaintiff. (*Id*. at 3.) According to the Plaintiff, on the evening of December 2, 2020, he stepped out the rear door with his left leg while carrying a plastic container with a gallon of water for various animals. (*Id*.) Plaintiff reports that when he looked down, he saw that the left side of the steps had the frame pulled away from the steps exposing the nails, but Plaintiff was in full motion and unable to stop his forward momentum. (*Id*.) Plaintiff alleges that he then fell forward "on his left side onto the sabotaged steps that collapsed under his weight," hitting the ground with his left shoulder and head. (*Id*.) Plaintiff alleges that he was passed out for some time after hitting his head. (*Id*. at 4.) Plaintiff alleges that he is now a "cripple," is in constant pain and must sleep on his right side on his sofa. (*Id*.) According to Plaintiff, in the latter part of 2020, Cook and his companion, Smith, sold their property. (*Id*.)

According to Plaintiff, "Cook makes daily and nightly forays onto Plaintiff's property." (*Id*. at 5.) Plaintiff reports that some of the destruction over the years included, smashing out the rear window of a 1964 Cadillac Fleetwood shell that Plaintiff purchased and cracking the windshield of Plaintiff's other 1964 Cadillac. (*Id*.) Plaintiff also alleges that Cook broke up portions of Plaintiff's concrete driveway. (*Id*.)

Plaintiff also reports that he had a seventh army cloth patch taped to the driver side rear windshield of both of his Cadillacs, and one morning Plaintiff found one patch was missing. (*Id*. at 5.) Plaintiff reports that he called the sheriff's office in Tehachapi to make a complaint about the missing patch, and the deputy who took the call asked the value of the patch and indicated that he could not address the incident as he was on duty and could not leave his

station. (*Id*.) According to Plaintiff, the following morning, Plaintiff noticed that the patch was back in the rear window in his Cadillac, but not taped as it was before its removal. (*Id*.) Plaintiff claims that in 2021, "[s]omething had changed the atmosphere," and he noticed articles in his home had been moved, including a clock on a stand in the same position for years had been moved and was placed differently, a water glass that was always kept in a cupboard was on the kitchen island, the channel on the television was not on the station it was on when he turned it off the night before, and papers he knew were in a folder were on the folder instead. (*Id*. at 6.) Plaintiff alleges that Cook is responsible for this as he "plays games by moving objects like a child." (*Id*.) Plaintiff alleges that he dismissed these, but later he realized that his house and garage keys and other items had been taken while he was in the hospital after surgery for a fractured pelvis, and he alleges that the keys were duplicated by someone. (*Id*. at 7.)

Additionally, Plaintiff alleges that the Kern County Sheriff's Department has engaged in gross discrimination against Plaintiff and that it failed to protect Plaintiff from Cook's continuous harassment and physical and mental harm allegedly inflicted on him. (*Id*. at 8-9.) Plaintiff asserts that "the Kern County Sheriff's Department has exhibited gross neglect of their duty to protect every citizen who calls it with a legitimate grievance," such as his own, and to act to eliminate any activity that is detrimental or damaging to the citizen. (*Id*. at 8.) Plaintiff alleges that the Kern County Sheriff's Department is as culpable for Plaintiff's injuries as Cook is because they have refused to protect Plaintiff from Cook who escalated harassment to physical injury, which resulted in a lifetime injury. (*Id*. at 9.)

Plaintiff claims damages against the Kern County Sheriff's Department in the sum of $5,000 for its failure and refusal to protect or aid Plaintiff in his requests for help from Cook. (*Id*. at 10.) Plaintiff also seeks an award of the same amount from "Cook for his unjustified and ongoing persecution." (*Id*.) Plaintiff also seeks an order to permanently enjoin Cook from entering Plaintiff's property and from associating with any person for the purpose of harassing or attempting to harass Plaintiff. (*Id*. at 7, 10.)

\\\

**C.      Analysis of Plaintiff's Complaint**

1.      <u>Section 1983</u>

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

2. <u>Pleading Standards</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the

6

claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236 (1974). In addition, "[e]ach allegation must be simple, concise, and direct. No technical form is required." Fed. R. Civ. P. 8(d)(1).

Although a complaint is not required to include detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77.

3. Discussion

   a. *Claims against the Kern County Sheriff's Department*

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't. of Soc. Services*, 436 U.S. 658, 691 (1978). Thus, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. *Id.*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor"). Rather, a local government entity may only be held liable if it inflicts the injury of which a plaintiff complains through a governmental policy or custom. *Id.* at 694; *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002).

To establish municipal liability, plaintiff must allege (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) that this policy amounted to deliberate indifference to his constitutional right; and (4) the policy was the "moving force behind the constitutional violation." *See Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Monell*, 436 U.S. at 690-92. A policy or custom of a government may be established when:

> (1) A longstanding practice or custom . . . constitutes the standard operating procedure of the local government entity;

7

(2) The decision-making official was, as a matter of law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or

(3) An official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Pellum v. Fresno Police Dep't*, 2011 WL 350155 at *3 (E.D. Cal. Feb. 2, 2011) (quoting *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005)). Further, a governmental policy may be inferred where there is evidence of repeated constitutional violations for which the officers were not reprimanded. *Menotti*, 409 F.3d at 1147.

A policy amounts to deliberate indifference when "the need for more or different action is so obvious, and the inadequacy of the current procedure so likely to result in the violation of constitutional rights, that the policymakers can reasonably be said to have been deliberately indifferent to the need." *Mortimer v. Baca*, 594 F.3d 714, 722 (9th Cir. 2010) (quotation omitted, citing *Oviatt*, 954 F.2d at 1477-78; *accord*. *Canton*, 489 U.S. at 390). To establish deliberate indifference by a government, "the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson*, 290 F.3d at 1186 (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). Plaintiff has not identified any custom or policy of the Kern County Sheriff's Department or alleged the municipality had notice of any potential harm caused by its policies.

For municipal liability to be imposed, the complaint must allege sufficient facts to demonstrate that an unconstitutional custom caused the plaintiff harm. A custom is "a widespread practice that . . . is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation mark omitted). Consequently, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out that policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

The plaintiff may establish municipal liability based upon a single event if he demonstrates that the person causing the constitutional injury was a final policymaker for the entity. *See City of St. Louis*, 485 U.S. at 123 ("only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability"). Plaintiff has made no allegations supporting a conclusion that the Kern County Sheriff's Department had a custom of violating civil rights. Instead, Plaintiff alleges that it failed and refused to protect him individually from defendant Cook. (*See* ECF No. 1 at 8.) Moreover, Plaintiff has not plead sufficient allegations supporting a conclusion that he suffered a violation of his constitutional rights. Thus, a Section 1983 claim against the Kern County Sheriff's Department is not cognizable.

      b.    *Civil Rights Claims*

To the extent that Plaintiff is purporting to allege any federal civil rights claims against any defendant, Plaintiff's complaint does not appear to set forth any violations of any constitutional right. In fact, many of Plaintiff's factual allegations appear to pertain to a private citizen or individual (Turhan Cook). However, to state a federal civil rights claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, plaintiff must allege that a specific defendant, while acting under color of state law, deprived him of a right guaranteed under the United States Constitution or a federal statute. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988). "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis in original)). Accordingly, Plaintiff fails to state a cognizable federal civil rights claim.

      c.    *Statute of Limitations*

Federal civil rights claims are subject to the forum state's statute of limitations applicable to personal injury claims. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v.*

9

*Okure*, 488 U.S. 235, 249-50 (1989). Effective January 1, 2003, California enacted a two-year statute of limitations for personal injury claims. *See Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007) (citing Cal. Civ. Proc. Code § 335.1).

Federal law, however, determines when a claim accrues and when the applicable limitations period begins to run. *Wallace*, 549 U.S. at 388 ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law" (emphasis in original)). A cause of action accrues under federal law as soon as a potential claimant either is aware or should have been aware of the existence and source of his or her injury. *See Lee v. United States*, 809 F.2d 1406, 1409-10 (9th Cir. 1987); *see also Wallace*, 549 U.S. at 388 ("the statute of limitations would normally commence to run" on the date on which a plaintiff could have filed suit). In addition, federal courts must give effect to a state's tolling provisions. *See Hardin v. Straub*, 490 U.S. 536, 543-44 (1989); *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999) ("where the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules").

Some of Plaintiff's factual allegations appear to pertain to events that happened beginning in 2014. (*See* ECF No. 1.) The Court previously advised Plaintiff that, because he filed his complaint on September 27, 2021, any cause of action that arises from any events that Plaintiff was aware of prior to September 27, 2019, would be barred by the statute of limitations in the absence of any grounds for tolling.

d. *State Law Claims*

Plaintiff attempts to raise a claim pursuant to Cal. Code Civ. Proc. § 335.1 (ECF No. 1 at 3-7), which provides the time of commencing actions: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b)

and (c). The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367. In the absence of any cognizable federal claims, the Court declines to address any purported state law claims.

## II.    CONCLUSION AND RECOMMENDATION

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claims. The Court provided Plaintiff with applicable legal standards, explained why Plaintiff's complaint failed to state a claim, and gave Plaintiff leave to file a First Amended Complaint, but Plaintiff chose to stand on his complaint.

Accordingly, based on the foregoing, it is HEREBY RECOMMENDED that:

1. This action be dismissed for failure to state a claim; and
2. The Clerk of Court be directed to close the case.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 25, 2022**                        /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE